IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 20-cv-930-DWD |
| ) | |
| PETROFF TRUCKING COMPANY, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

On September 14, 2020, Plaintiff United States of America ("United States") filed this civil action seeking injunctive relief and civil penalties for violations of the Clean Water Act ("CWA") against Defendant Petroff Trucking Company ("Petroff"). The complaint alleges that Petroff discharged pollutants into the waters of the United States without authorization from the United States Department of the Army Corps of Engineers ("COE") on a site located at about 650 Madison Road, East St. Louis, Illinois (hereafter the "Site"). By motion dated January 12, 2021, Petroff seeks dismissal of the United States' complaint. (Doc. 10). The United States filed a response in opposition to Petroff's motion to dismiss. (Doc. 15). For the reasons delineated below, the Court denies Petroff's motion to dismiss.

### FACTUAL ALLEGATIONS

At all times relevant to the complaint, Petroff Trucking was a heavy construction and trucking company that owned and operated the Site. In that capacity, Petroff

1

controlled or directed activities that occurred at the Site. The United States filed suit alleging that Petroff made unauthorized discharges of dredged or fill material on the Site and that those discharges violated § 308 and § 309 of the CWA.

The Site comprises approximately 22.6 acres of which 15.5 acres are freshwater wetlands. Wetlands on the Site are hydrologically connected to the Cahokia Canal ("Canal") via two culverts that passed through a 100-foot berm between the wetlands and the Canal. Absent the berm, the water of the wetlands would abut, and be directly connected to, the Canal. Additionally, the Canal flows 2.8 miles downstream to the Mississippi River and has physical indicators of a bed, a bank, and an ordinary high-water mark.

Prior to the allegedly unauthorized discharges, the United States claims that the wetlands on the Site exhibited flow characteristics and ecological functions that affected the chemical, physical, and biological integrity of the Canal and the Mississippi River. Specifically, they claim the wetlands, alone and in combination with similarly situated lands in the region, provided: purification of surface water run-off prior to discharge into the Canal and the Mississippi River; floodwater retention and purification prior to discharge into the Canal and the Mississippi River; nutrient export to downstream aquatic food webs; and a valuable plant and wildlife habitat.  Furthermore, the United States alleges that the wetlands on the Site, the Canal, and the Mississippi River are and were at the time of the alleged discharges, "waters of the United States", that fall under the regulatory jurisdiction of the CWA.

The United States alleges that Petroff and/or persons acting on its behalf and at its direction cleared, stumped, graded, and dredged wetlands on the Site, causing discharges of dredged and/or fill material into wetlands and subsequently into the Canal and the Mississippi River. The United States further alleges that these fill materials, including dirt, spoil, rock, and/or sand, constitute "pollutants" as defined in the CWA. To discharge these pollutants into the waters on the Site, Petroff used excavators, bulldozers, trucks, and/or other earth-moving equipment, which, as the United States alleges, constitute "point source[s]" as defined in the CWA. Additionally, Petroff did not obtain a permit from the Secretary of the Army, acting through the Chief of Engineers of the COE, as required for the alleged discharge of pollutants into waters of the United States under the CWA. Thus, the United States ultimately alleges that Petroff's unauthorized discharges of dredged or fill material into waters of the United States, including wetlands at the Site, violates the CWA.

Specifically, the United States alleges that Petroff discharged pollutants without a permit (Count I). The United States further alleges that Petroff failed to report the information required by the Clean Water Act (Count II). The United States seeks a permanent injunction barring Petroff from making unauthorized discharges into any waters of the United States except in compliance with the CWA and requiring Petroff, among other things, to take remedial actions at the Site and to compensate financially for any environmental damage done. Petroff moves to dismiss this action as moot because there is no work occurring at the Site at this time. They also deny that there are any discharged pollutants to remove from waters of the United States.

## MOTION TO DISMISS STANDARD

A complaint must include enough factual content to give the opposing party notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009). To satisfy the notice-pleading standard of Rule 8, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" in a manner that provides the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555 and quoting Fed. R. Civ. P. 8(a)(2)). In ruling on a motion to dismiss for failure to state a claim, a court must "examine whether the allegations in the complaint state a 'plausible' claim for relief." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 677-678). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," rather than providing allegations that do not rise above the speculative level. *Id.*

## ANALYSIS

**I.  Mootness of Request for Prospective Permanent Injunction**

Petroff first argues that this case is moot as to any future action that may occur at the Site because "nothing is taking place, nor has anything taken place" at the Site for over a year, so "there is nothing to enjoin." As an initial matter, Petroff suggests the Court should consider information outside the complaint and convert its motion to one for summary judgment. While Rule 12(d) affords discretion for a district court to consider extraneous materials and convert a motion to dismiss to one for summary judgment, nothing in the record counsels in favor of doing so at this time. Discovery in this matter

4

has just begun, and it would be premature to consider evidence submitted by Petroff before the United States has an opportunity to engage in meaningful discovery. As a result, the Court considers Petroff's arguments in favor of dismissal with respect to the allegations in the United States' complaint.

A "defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.* 455 U.S. 283, 289 (1982)). To find otherwise would leave a defendant free to resume the challenged practice, so a case only runs the risk of becoming moot where it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)). The Supreme Court has described a defendant as having a "heavy burden" to demonstrate "that the challenged conduct cannot reasonably be expected to start up again." *Id.* Here, Petroff, with its brief argument, fails to carry that heavy burden, and, based on the allegations in the complaint, the challenged practices could resume at any time absent an injunction prohibiting them in the future. As such, the United States' request for a mandatory permanent injunction prohibiting Petroff from engaging in future violations of the CWA is not moot.

II.     **Clean Water Act Claims**

Petroff argues that the United States fails to state a claim for a violation of the CWA because the Site and the Canal are not navigable waters of the United States and because there are no discharged pollutants to remove. To state a claim for a violation of the CWA,

5

the United States must allege that: (1) a person; (2) discharged pollutants; (3) into navigable waters; (4) without a permit from the Corps. *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 947 (7th Cir. 2004) (citing 33 U.S.C. § 1311(a)). Under the CWA, the term "person" means "an individual, corporation, partnership [or] association." 33 U.S.C. § 1362(5).

In its complaint, the United States pleaded that Petroff is a "heavy construction and trucking company incorporated in the State of Illinois, with its principal place of business in Illinois." (Doc. 1, ¶¶ 7, 32). The interpretation of the term "person" does not take on its literal meaning under the CWA but includes corporations such as Petroff, thus making them a person covered by the regulatory jurisdiction of the CWA. Moreover, Petroff does not dispute at this time that it did not obtain a permit for the alleged discharges on the Site from the COE. Instead, Petroff's motion to dismiss focuses on whether the United States pleaded sufficient facts to establish that Petroff discharged pollutants into navigable waters of the United States.

### A. Discharge of Pollutants

Petroff argues that they did not discharge pollutants because they claim that they did not "dump" or deposit anything into the canal. (Doc. 10, p. 5). Instead, Petroff claims that they removed dirt and placed it on top of an adjacent commercially operated landfill. (Doc. 10, p. 7). Furthermore, Petroff alleges that if there was any "dumping," it was merely incidental dirt that may have dropped or spilled in the water during the removal process on prior converted farmland. (Doc. 10, p. 5). The United States alleges in its

complaint, however, that Petroff discharged dredge and fill material into wetlands on the Site and that Petroff's affirmative defenses do not justify dismissal under Rule 12(b)(6).

The term "discharge of a pollutant" is defined as "any addition of any pollutant to navigable waters from any point source …" 33 U.S.C. § 1362(12). The CWA defines "pollutant" as "any solid waste" including dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water. *County of Maui, Haw. v. Haw. Wildlife Fund*, 140 S. Ct. 1462, 1469 (2020) (citing § 502(6), 86 Stat. 886); 33 U.S.C. § 1362(6). The Supreme Court has held that this list is not exhaustive and that "pollutant" should be interpreted broadly. *Rapanos v. United States*, 547 U.S. 715, 723 (2006), quoting 33 U.S.C. § 1362(6). Furthermore, a "point source" means "any discernible, confined and discrete conveyance." 33 U.S.C. § 1362(14). Point source pollution occurs when pollution reaches waters of the United States through a concrete, discrete conveyance, as opposed to some unidentifiable point of discharge, regardless of the kind of pollution at issue or the activity causing it. *County of Maui, Haw.* 140 S. Ct. at 1475-76. This covers mechanized equipment such as excavators, bulldozers, and dump trucks, all of which constitute point sources. *United States v. Gerke Excavating, Inc.*, 412 F.3d 804, 805 (7th Cir. 2005).

Petroff argues that in their removal process some incidental dirt may have been dropped or spilled on the prior converted farmland, which could accordingly exempt them from the regulatory jurisdiction of the CWA. Incidental fallback is not a dredged

material that falls under the jurisdictional scope of the CWA. 33 C.F.R. § 323.2(d)(1)(iii); *United States v. LaPlante*, No. 03 C 50506, 2006 WL 8462059, (N.D. Ill. May 2, 2006). Moreover, prior converted farmland does not fall under the jurisdictional scope of the CWA. *United States v. Hallmark Constr. Co.*, 14 F. Supp. 2d 1069, 1076 (N.D. Ill. Sept. 1998).

Here, because the Court has declined to convert the motion to dismiss pursuant to Rule 12(d), the important consideration is what the United States alleges in its complaint. They allege that Petroff cleared, stumped, graded, and dredged wetlands on the Site, causing discharges of dredged and/or fill material into wetlands and subsequently into the Canal and the Mississippi River which included dirt, spoil, rock, and/or sand. These materials all constitute pollutants that fall under the jurisdiction of the CWA. Additionally, the complaint states that the pollutants came directly from Petroff's earth-moving equipment such as their excavators, bulldozers, and trucks. The earth-moving equipment are alleged to have been used to move the materials into waters of the United States on the Site and thus constitute point sources covered by the CWA.

The question as to whether the deposits at issue constitute incidental fallback or occurred on property that was prior converted farmland are affirmative defenses. The United States is not required to anticipate affirmative defenses in their complaint. Since the discharged materials as alleged are pollutants under the CWA and are directly conveyed from a discrete source such as Petroff's earth-moving equipment, the complaint sufficiently alleges that Petroff discharged pollutants. Accordingly, the Court finds that the complaint by the United States adequately alleges that Petroff discharged pollutants in a manner that satisfies the notice-pleading requirements of Rule 8.

## B. Navigable Waters

The Supreme Court has interpreted the waters covered by the CWA broadly. *See United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 133 (1985) (noting that "navigable" as used in the Act is of limited import and Congress intended to repudiate limits placed on federal regulation by earlier water pollution control statutes). However, this intent to regulate waters beyond those that are traditionally understood as navigable has qualifications. *See Rapanos v. United States*, 547 U.S. 715, 731-32 (2006) (Scalia, J., plurality). The plurality opinion in *Rapanos* explained that the term "navigable waters" under the CWA "includes only relatively permanent, standing, or flowing bodies of water, not intermittent or ephemeral flows and only those wetlands with a continuous surface connection to bodies that are waters of the United States." *Id*.

Petroff argues that the plurality opinion in *Rapanos* demonstrates that this case must be dismissed, but, as there was no majority opinion, *Rapanos* must be considered carefully. The Seventh Circuit has shed light on how to interpret the *Rapanos* decision and held that Justice Kennedy's standard set out in his concurrence should be applied to determine whether the CWA has regulatory jurisdiction. *United States v. Gerke Excavating, Inc.*, 464 F.3d at 723-24 (holding that when a majority of the Supreme Court agrees only on the outcome of a case, lower-court judges follow the narrowest ground to which a majority of the Justices would have assented if forced to choose which is Justice Kennedy's standard). Justice Kennedy's concurrence states that a wetland or water constitutes "navigable waters" under the regulatory jurisdiction of the CWA if it possesses a significant nexus to waters that are more readily understood as navigable.

*Rapanos*, 547 U.S. at 718 (citing *SWANCC v. U.S. Army Corps. Of Eng'rs*, 531 U.S. 159, 167, 172) (Scalia, J., plurality). A nexus is established if the wetlands, alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters understood as navigable in the traditional sense. *Id*. If the effects on water quality are speculative or insubstantial, they fall outside the zone fairly encompassed by the term "navigable waters". *Id*.

Here, the United States alleges that the Cahokia Canal is a tributary to the Mississippi River, which is a traditional navigable waterway of the United States, and that it has physical indicators of a high-water mark. Tributaries of waters of the United States are themselves "water of United States" for purposes of the CWA. 33 U.S.C.A. § 1362(7); 33 C.F.R. § 328.3(a). Furthermore, the COE deems a water a tributary if it feeds into a traditional navigable water and possesses an ordinary high-water mark. *Rapanos*, 547 U.S. at 781 (Kennedy, J., concurring). In deciding a motion to dismiss, the Court must accept all factual allegations in the complaint as true. Taking the alleged facts as true, the Cahokia Canal is covered under the CWA as a navigable water, and Justice Kennedy's nexus test should be applied.

Applying this test to the facts alleged in this case, the wetlands on Petroff's property would fall under the statutory term of "navigable waterway" because the wetlands changed, and continued to change, the chemical, physical, and biological integrity of the Canal and Mississippi River. Specifically, the United States alleges that the impacted wetlands on Defendant's property provided important ecological functions such as purification of surface water run-off prior to discharge into the Canal and

10

Mississippi River, floodwater retention, nutrient export to downstream aquatic food webs, and a valuable plant and wildlife habitat. Additionally, the wetlands were connected hydrologically via two culverts that passed through a 100-foot berm between the wetlands and the Canal. These allegations are sufficient to demonstrate the required nexus at this time.

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face, rather than providing allegations that do not rise above the speculative level. *Arnett v. Webster*, 658 F.3d 742 (7th Cir. 2011). The allegations in the complaint asserting changes to the integrity of the Canal and the Mississippi river were concrete and specific and thus rose above the speculative level. These changes established a nexus between the Defendant's property, the canal, and the Mississippi River. Accordingly, the complaint sufficiently alleges that discharges into navigable waters are at issue.

## CONCLUSION

For the above-stated reasons, the motion to dismiss filed by Defendant Petroff Trucking Company, Inc. (Doc. 10) is **DENIED**.

**SO ORDERED.**

Dated: June 15, 2021

_____
DAVID W. DUGAN
United States District Judge